**EDWARDS TRANSFER COMPANY, INC., Appellant,**

v.

**Glenn Ray BROWN, Ricky Brown, Kay King, and Mary Jenkins, Appellees.**

**No. 05–86–00775–CV.**

Court of Appeals of Texas, Dallas.

Oct. 16, 1987.

Rehearing Denied Nov. 18, 1987.

Jack Pew, Michael L. Knapek, Dallas, for appellant.

Robert W. Hartson, Dallas, for appellee Mary Jenkins.

Tony D. Crabtree and Terry Hyatt, Dallas, for appellees Glenn Ray Brown, Ricky Brown and Kay King.

Before DEVANY, STEWART and HECHT, JJ.

HECHT, Justice.

Robert L. Jenkins was killed at work when an electric hoist fell and struck him, and this wrongful death action ensued. The jury awarded Jenkins' mother and three illegitimate children, plaintiffs-appellees, $554,350 actual and exemplary damages against the company which installed the hoist, defendant-appellant.

We hold that illegitimate children have an unrestricted statutory right to sue for the wrongful death of their father. We conclude, however, that the district court erred in refusing to inquire of the jury whether the decedent's own negligence contributed to his death. We therefore reverse the judgment and remand the case to the district court.

## I

Robert L. Jenkins worked for the Acme Paper Stock Company, the business of which was baling and processing wastepaper for sale to mills. Acme rented an electric hoist and enlisted Edwards Transfer Company to hang it from an I–beam in Acme's warehouse. Two Edwards employees lashed the hoist to the beam with steel cable without using softeners to protect the cable against the beam's sharp edges. As they were finishing, one of Edwards' employees warned an Acme foreman not to use the hoist until it could be centered directly over the shaft through which the platform to be attached to it would travel. Heedless of the warning, Acme suspended a platform from the hoist to lift paper out of the basement of the warehouse. A few days later, while Jenkins was riding the platform, the cable broke and the hoist fell, striking and killing him. The jury found that Edwards' negligence in failing to use softeners with the cable in tying the hoist to the beam was a proximate cause of the accident.

The day before the accident Jenkins was seen working on the hoist. Jenkins told an Edwards employee that he was going to take the hoist down because it was not tied to the I–beam correctly. There was testimony at trial that at the time of the accident the cable was not wrapped around the hoist and I–beam the same way as when Edwards' employees hung the hoist.

Acme intended the hoist platform to be used for freight only. Although Acme's employees sometimes rode on the platform, they were instructed many times not to do so because it was not safe for use as a personnel elevator. Jenkins was specifically told not to ride the platform. However, equipping the platform with the safety features of a personnel elevator would not have prevented the accident.

## II

An action for wrongful death is purely a creature of statute. *Elliott v. City of Brownwood*, 166 S.W. 1129 (Tex. 1914); *Childs v. Childs*, 107 S.W.2d 703 (Tex.Civ.App.—Beaumont 1937, no writ). Under the Texas Wrongful Death Act recovery is afforded only "the surviving spouse, children, and parents of the deceased". Tex.Civ.Prac. & Rem. Code

§ 71.004 (Vernon 1986). "Children" is not defined by the Act.

■ The equal protection clause of the fourteenth amendment to the United States Constitution prohibits a state from absolutely barring illegitimate children from recovery for wrongful death allowed legitimate children. *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). *See also Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *Gonzalez v. Texas Employers Ins. Ass'n*, 509 S.W.2d 423, 426–428 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.). The equal protection guaranty does not, however, prohibit a state from imposing upon an illegitimate child a greater burden of proof to establish his right to recover for the wrongful death of his father, as long as that burden is reasonably related to the state's interest in avoiding fraudulent claims of paternity. *Parham v. Hughes*, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979).

■ Edwards argues that the Texas Wrongful Death Act should be read to import the same restrictions upon the right of illegitimate children to recover for the wrongful death of their father that are imposed upon the right of illegitimate children to inherit from their father by section 42(b) of the Texas Probate Code. That section provides:

> Paternal Inheritance. For the purposes of inheritance, a child is the legitimate child of his father if the child is born or conceived before or during the marriage of his father and mother or is legitimated by a court decree as provided by Chapter 13 of the Family Code, or if the father executed a statement of paternity as provided by Section 13.22 of the Family Code, or a like statement properly executed in another jurisdiction, so that he and his issue shall inherit from his father and from his paternal kindred, both descendants, ascendants, and collaterals in all degrees, and they may inherit from him and his issue.

This restriction upon the right of illegitimate children to inherit from their father is constitutional. *Davis v. Jones*, 626 S.W.

2d 303 (Tex.1982); *see Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978); *Labine v. Vincent*, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971); *cf. Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).

While we harbor little doubt that the Legislature could constitutionally restrict wrongful death recovery by illegitimate children just as it has restricted inheritance by illegitimate children, it has not chosen to do so. Certainly, it is not required to do so. Section 42(b) is expressly limited to "purposes of inheritance". Edwards would have us disregard this limitation and extend the distinctions of the Probate Code to the Wrongful Death Act. We decline to do so.

Edwards argues that unrestricted wrongful death recovery by illegitimate children results in a peculiar anomaly. In a wrongful death action children may recover damages for loss of inheritance. *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 632–634 (Tex.1986). Unless the conditions of section 42(b) of the Probate Code are read into the Wrongful Death Act, Edwards argues, illegitimate children could recover in a wrongful death action for a loss of inheritance they would not be entitled to take under the Probate Code. Edwards' hypothesized legal incongruity does not persuade us to usurp the Legislature's prerogative. Wrongful death recovery for loss of inheritance cannot be the bootstrap to resolve all consequent statutory inconsistencies.

We hold that Jenkins' illegitimate children were not required to comply with the requirements of section 42(b) of the Probate Code in order to recover under the Wrongful Death Act. Edwards' third point of error is overruled.

### III

The district court refused to submit to the jury Edwards' requested issues inquiring whether Jenkins' own negligence contributed to the accident. Edwards complains that this refusal was error. Appellees argue that there is no probative evidence that any negligence of Jenkins could

have caused the accident to warrant submission of the jury issues.

All controlling issues properly raised by pleadings and evidence must be submitted to the jury upon a party's request. Tex.R. Civ.P. 279. "A judge may refuse to submit an issue only if no evidence exists to warrant its submission." *Brown v. Goldstein,* 685 S.W.2d 640, 641 (Tex.1985).

The issue of contributory negligence has two elements, negligence and proximate cause. Negligence is the failure to use ordinary care, that is, doing what a person of ordinary prudence would not do, or failing to do what a person of ordinary prudence would do, under the same or similar circumstances. *Great Atlantic & Pacific Tea Co. v. Evans,* 142 Tex. 1, 175 S.W.2d 249, 250–251 (1943). Proximate cause is cause which in a natural and continuous sequence produces an event which would not otherwise have occurred and which a person using ordinary care would have foreseen. There may, of course, be more than one proximate cause of an event. Proximate cause thus has two elements. First, proximate cause must be sufficient and necessary; that is, it must be enough to make the event happen, and it must be such that without it the event would not have happened. This element is sometimes referred to as cause in fact. Second, the result must be reasonably foreseeable to a person using ordinary care. *Nixon v. Mr. Property Management Corp.,* 690 S.W.2d 546, 549–550 (Tex.1985). "It is not required that the particular accident complained of should have been foreseen. All that is required is that the injury be of such a general character as might reasonably have been anticipated...." *Nixon,* 690 S.W.2d at 551.

Edwards advances three reasons why submission of the issue of Jenkins' negligence to the jury was required.

First, Edwards argues that its employee's warning to a foreman of Jenkins' employer not to use the hoist is legally imputed to Jenkins, and that his failure to heed that warning raises the issue of his negligence.[1] We do not agree that a warning given to one employee of a business is legally imputed to all employees, so that they may be negligent by failing to follow a warning they never heard. A person of ordinary prudence cannot avoid an unknown danger and has no duty to do so.

> If the plaintiff cannot reasonably anticipate or have knowledge of the danger, he cannot be charged with contributory negligence, because knowledge is an essential element of contributory negligence. ... Without knowledge, the duty to guard against the danger does not arise:
>
> [T]here is neither a legal nor a moral obligation to guard against that which cannot be foreseen in the light of common or ordinary experience, and under such circumstances, the duty of foresight should not be arbitrarily imputed....

*J.R. Beadel & Co. v. De La Garza,* 690 S.W.2d 71, 73 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (citations omitted).

A defendant's warning to a plaintiff's supervisor is evidence not of plaintiff's negligence but of defendant's lack of negligence. The legal benefit derived from such a warning is not imputation of negligence to another but denial of one's own

---

1. Edwards relies primarily upon two premises liability cases, *Big Bend Flying Serv., Inc. v. Hinojos,* 489 S.W.2d 694, 696 (Tex.Civ.App.—El Paso 1973, no writ), and *Shell Oil Co. v. Waxler,* 652 S.W.2d 454 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

*Big Bend* holds that an invitee discharges his own duty to warn another invitee's employees of a defect in the premises by warning their supervisor. *Big Bend* does not hold that an employee's failure to heed a warning given only to his supervisor is negligence.

*Shell* states that an owner's warning of a defect in premises no longer constitutes a complete bar to recovery against the owner but "bears only upon the issue of the plaintiff's contributory negligence." Although the owner in *Shell* warned an invitee's foreman and not the injured employee, the court does not hold that the employee was contributorily negligent in failing to heed the warning.

Edwards has cited us to no case in which an employee's failure to heed a warning which he never heard and which was given only to his foreman was negligence, and we are aware of none.

negligence. Thus, for example, a person is not negligent who makes a temporary installation and warns of the dangers abiding completion, if he acts as a person using ordinary prudence would have. The present case presents a similar situation with Edwards arguing that its installation of the hoist was only temporary, and that it so warned Acme. The argument, however, goes to Edwards' want of negligence. Jenkins' failure to heed a warning he never heard is no evidence of his own negligence.

Second, Edwards argues that evidence of Jenkins' tampering with the hoist installation the day before the accident raises the issue of his negligence. Edwards' employees testified that they wrapped the cable around the hoist and beam six or seven times, did not cross-wrap it, and secured it with two clamps. An expert witness testified that at the time of the accident the cable was wrapped around the hoist and beam four times, was cross-wrapped, and was secured with four clamps. There was some testimony that the hoist may even have been moved to a different beam than the one Edwards' workers tied it to. Edwards' employees also testified that they saw Jenkins working on the hoist the day before the accident. A reasonable inference from the evidence is that Jenkins changed the way the hoist was hung. There is no evidence or inference, however, that making those changes was negligence, or that it caused the accident.

Third, Edwards argues that evidence that Jenkins was riding on the platform at the time of the accident in disobedience of specific instructions to the contrary raises the issue of his negligence. Appellees respond that Jenkins was not negligent in riding on the platform, and that even if he was, there is no evidence that such negligence caused the hoist to fall, and thus no evidence to require submission of the issue of his negligence to the jury.

Appellees argue that the reason Acme instructed its employees and Jenkins specifically not to ride the freight platform was that it lacked the safety features of a personnel elevator, not that the hoist might fall. Assuming this was the sole reason for Acme's concern, negligence is not measured by the reasons for the rule but by the manner of its breach. From the evidence the jury could have found that Jenkins rode the platform in disregard of his employer's instructions when an ordinarily prudent person in the same circumstances would not have done so.

■ Appellees argue that Jenkins' additional weight on the platform did not cause the hoist to fall, and that there is therefore no evidence that his riding the platform was a proximate cause of the accident. Appellees misstate the issue. The issue is not what caused the hoist to fall, but what caused the injury to Jenkins. There is some evidence that Jenkins' being on the platform was a cause in fact of his death: if Jenkins had not been where he was instructed not to be, he would not have been killed, and his being on the platform made it possible for the hoist to hit him. There is also some evidence of foreseeability. Even if Jenkins could not have foreseen that the hoist would fall, he could have foreseen that he could be injured riding on the platform. As we have noted above, a person need not foresee the particular type of accident that results in his injury for his negligence to be a proximate cause of his injury. There was thus some evidence that Jenkins' riding on the platform was a proximate cause of his injury.

■ Appellees argue that any role Jenkins' conduct may have played in the accident was minimal relative to Edwards' failure to hang the hoist properly. The question here, however, is not whether the jury would likely have found Jenkins contributorily negligent, or even whether there is sufficient evidence for them to have done so. *See Pringle v. Nowlin*, 629 S.W.2d 154 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). The question is only whether there is some evidence, more than a surmise or suspicion, that Jenkins' death was caused in any part by his own negligence. We conclude there is.

The district court was obliged to submit Edwards' requested contributory negligence issues to the jury, and its refusal to

do so was reversible error. Edwards' fourth point of error is sustained.

The better course when the question whether to submit an issue seems close is to submit the issue and procure a finding from the jury. Rarely does unnecessary submission of an issue prejudice a party. If the jury's answer must later be disregarded, the necessity of a new trial may be avoided. As it is, that burden now falls upon the parties and the district court.

The judgment of the trial court is reversed and the case remanded for further proceedings.[2]

**2.** Edwards' 21 other points of error are treated separately in an unpublished opinion.