JOHN STROBEL, Individually and as Father of THOMAS STROBEL, Respondent-Appellant, *v.* STATE OF NEW YORK, Appellant-Respondent. (Claim No. 50618.)

Third Department, May 20, 1971.

*Morton H. Feder* and *Emile Z. Berman* for respondent-appellant.

*Louis J. Lefkowitz*, Attorney-General (*Peter Joseph Dooley* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

SIMONS, J.   These are cross appeals from a judgment in favor of the claimant, entered August 12, 1970 upon a decision of the Court of Claims, awarding damages for personal injuries and for medical expenses to the claimant.   The infant claimant appeals from the judgment on the ground of inadequacy and the State appeals seeking reversal.

The infant claimant sustained serious permanent personal injuries while a passenger in an automobile operated by one Nitti, which was involved in a one-car accident while being pursued by State Trooper Norman Kilfoyle.   The Court of Claims has found that the officer conducted the pursuit in a negligent and reckless manner and that the officer's negligence was a proximate cause of the accident concurring with the negligence of the driver of the run-away automobile resulting in the injuries to the claimant.   We find the sole cause of the accident was the negligence in the operation of the Nitti car.

The chase began some seven miles before the scene of the accident in a rural area north of Kingston.   The trial court has found the trooper blameless for the chase outside the City of Kingston.   We agree with that finding, but we disagree with finding of liability against the State because of the trooper's actions in pursuing the Nitti automobile after it reached the Kingston city limits.   We do not believe, as the trial court held,

that good police practice and the exercise of reasonable care at that time necessarily called for the trooper to abandon the chase.

Nitti entered Kingston on Washington Avenue without his lights on and drove an erratic course of right and left turns, during which he drove through a gas station, at a speed the claimant estimates at 50 to 60 miles per hour down a one-way street and perhaps ran one red light. The trooper pursued him with his siren and lights on. Finally, at the end of Clinton Avenue, Nitti failed to turn at a dead end, went straight ahead through an open field, a distance of 170 to 200 feet, and over a 200-foot precipice, with the car crashing into a tree, exploding and burning. The claimant was trapped inside the burning car for some time until the trooper and others rescued him.

The chase occurred on a Saturday night at about 8:45 P.M. It covered about 2 miles in the city and lasted about 10 minutes. The claimant testified that the Nitti car's attained speed in the city was 70 to 80 miles per hour and never traveled slower than 40 to 50 miles per hour. The route taken by the cars raises considerable doubt that any such speeds could have been consistently maintained in the city. Claimant did not observe the trooper behind the car at any time in Kingston and was, therefore, unable to testify as to the trooper's speed or actions. Trooper Kilfoyle stated that his speed in the city ranged from 10 to 80 miles per hour.

It is obvious that speed, particularly high speed, is dangerous. But speed is necessary for apprehension and it was the duty of the trooper to undertake pursuit and attempt to apprehend a traffic violator. (*Wrubel* v. *State of New York,* 11 Misc 2d 878.) Section 1104 of the Vehicle and Traffic Law grants to the drivers of emergency vehicles in pursuit of actual or suspected violators the right to pass red lights and to disregard one-way streets and maximum speed limits as long as life or property is not endangered by their acts. The privilege accorded an emergency vehicle driver can only be denied when there is evidence of an exercise of these privileges that is not reasonable under the circumstances. (*Stanton* v. *State of New York,* 29 A D 2d 612, affd. 26 N Y 2d 990.)

We are concerned solely with the action of the trooper's car, not that of Nitti. Trooper Kilfoyle's unrebutted testimony was that he drove through the city, at times at high speeds, at other times slowly, but always with his lights and siren on for warning, watching others on the highway for safety sake and continually re-evaluating the wisdom of continuing or

discontinuing the chase. His conduct was reasonable under all the circumstances.

It is a futile exercise to speculate that Trooper Kilfoylé should have abandoned the chase just when his judgment told him the danger from Nitti's recklessness was greatest upon entering an urban area. It is entirely possible that his action of following the unlighted and speeding Nitti car to warn of its approach may have saved innocent lives. The trial court's assumption that Nitti would have stopped his flight if the trooper had stopped is not necessarily warranted, particularly when it is realized that this was the second trooper that day who found it necessary to stop Nitti. On different occasions, the trooper was out of sight and claimant testified that from inside the Nitti car he could not hear a siren, yet Nitti did not slacken his speed. At Clinton Avenue, when the trooper was out of sight for a few moments, Nitti actually increased his speed drastically. Various alternatives to Trooper Kilfoyle's actions can be suggested now, but the rule is established that if a police officer conducting a pursuit uses his best judgment as to the most effective means of dealing with a traffic violator and acts without reckless disregard of the safety of others, no liability will attach to his actions even though hindsight might disclose other means of apprehension which may have been safer. (*Stanton* v. *State of New York, supra*; *Dunn* v. *State of New York*, 34 A D 2d 267; *Thain* v. *City of New York*, 35 A D 2d 545.)

The judgment should be reversed, on the law and the facts, and the complaint dismissed. Claimant's cross appeal should be dismissed.

HERLIHY, P. J., REYNOLDS, GREENBLOTT and COOKE, JJ., concur.

Judgment reversed, on the law and the facts, and complaint dismissed, without costs. Claimant's cross appeal dismissed, without costs.